Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission *v.* Transit Casualty Insurance Company, Appellant.

44

Argued February 5, 1975, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER,
ROGERS and BLATT. Judge WILKINSON, JR., did not par-
ticipate.

*Robert P. Reed,* with him *Christian S. Erb, Jr.,* and
*Metzger, Wickersham, Knauss & Erb,* for appellant.

*Elisabeth S. Shuster,* Assistant Counsel, with her *San-
ford Kahn,* General Counsel, for appellee.

OPINION BY JUDGE BLATT, June 25, 1975:

This is an appeal from a decision and order of the
Human Relations Commission (Commission) dated July
29, 1974 in which the Transit Casualty Insurance Com-
pany (respondent) was ordered to cease and desist from
discriminating on the basis of sex and to pay Ms. Nettie
M. Renoll, the complainant, $12,147.03 as damages result-
ing from the respondent's discriminatory conduct as to
her employment.

The respondent, by its agent, Markel Service, Inc.
(Markel), had issued commercial motor vehicle liability
insurance to Beverage Transportation, Inc. (Beverage),
a commercial trucking business, effective during the
period running from February 18, 1970 to February 18,

1972. The complainant, employed by Beverage as a driver, became involved in what was termed by the insurance adjuster as an accident of minor nature on March 18, 1970 when her truck slipped on ice and snow and jumped a guard cable. After notice of the accident reached Markel, the respondent's sales and underwriting agent, Markel informed Beverage that insurance coverage for the complainant would be terminated and that she should be relieved of all driving duties as of July 10, 1970. Beverage, therefore, told the complainant that she could no longer drive for them, and she then filed a complaint with the Commission alleging that Beverage had discharged her because of her sex. In an amended complaint, however, she charged the respondent here with violations of Section 5(e) of the Pennsylvania Human Relations Act[1] and dropped her complaint as to Beverage. It is Section 5(e) of the Act which provides in part that it is unlawful for any person to aid, abet, incite, compel or coerce any employer from discharging an employee because of that person's sex.

The Human Relations Commission held hearings and concluded that the respondent, through its agent Markel, had coerced and compelled Beverage to discharge the complainant and ordered the respondent to cease and desist from such activities. The Commission then ordered the respondent to pay the complainant $12,147.03 damages with interest for lost pay through February 8, 1972. This appeal followed.

Our scope of review, of course, is limited to a determination of whether the Commission's adjudication is in accordance with law or whether the findings of fact necessary to support its adjudication are supported by substantial evidence. *Gorchov Brothers Real Estate v. Human Relations Commission,* 14 Pa. Commonwealth Ct. 310, 321 A.2d 405 (1974).

---

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955(e).

In its findings of fact, the Commission listed:

"7. Markel Service, Inc. (hereafter Markel) was the General Insurance Agent for the Respondent during the period relevant hereto."

The respondent argues that it cannot be held liable for wrongful conduct of Markel who was an "independent broker" and not an agent. Arthur Wilson of Markel's underwriting department, however, testified that Markel served as a general agent for the respondent as well as for various other insurance companies. A general agent may be defined as one who is authorized to pass upon and accept risks, negotiate terms of insurance contracts and execute and deliver such contracts in accordance with the directions of the company he represents. P.L.E. Insurance §31. Wilson described Markel's activities on behalf of the respondent in these terms and convincingly established the agency-principal relationship. As in all such relationships, liability may be imposed upon the principal for the misconduct of the agent. *Siple v. Logan* 232 Pa. Superior Ct. 322, 335 A.2d 758 (1975) ; *see Bowman v. Home Life Insurance Company of America,* 243 F.2d 331 (3rd Cir. 1957). Such is the case here.

The issue, therefore, is whether or not Markel compelled Beverage to discharge the complainant because of her sex. The respondent argues that Markel's decision to exclude the complainant from coverage took place on June 10, 1970 at a time when she was thought to be a male. The Commission found that at that time:

"8. Interstate Motor Carriers Agency (hereafter Interstate) served as a communicator between Beverage and Markel during the period relevant hereto.

"9. On June 10, 1970, Markel notified Interstate that 'Mr. (sic) Renoll was twenty-three years of age' . . . and 'unless the insured has some redeeming features to offer on this individual we would like confirmation that he (sic) is placed in a capacity other than as a driver of the insured equipment.' "

The Commission concluded that the complainant had not yet been excluded from coverage but rather that:

"10. A decision by Respondent to prohibit Complainant from driving a truck for Beverage awaited a response from Beverage as to whether they had 'redeeming features to offer as to why Complainant should be permitted to continue.'"

The respondent attempts to discredit these findings by asserting that Markel's apparent concern over the complainant's redeeming features was really a phrase used by Markel's underwriting department to promote harmony with Markel's production department who made the direct contracts with the insured client. It was the responsibility of underwriting, he asserts, to avoid or eliminate bad risk clients and the responsibility of production to produce new or to maintain old clients. According to Wilson, this conflict in notes tended to create tension between the departments. He testified, therefore, that after receiving notice of the accident on June 1, 1970, underwriting transmitted a memorandum to production stating that "the notice indicates that Mr. Renoll is 23 years of age and unless the insured has some redeeming features to offer on this individual, we would like confirmation that he has been placed in a capacity other than as a driver of insured equipment." It is quite apparent, however, that production did not perceive this communication in the manner advanced by the respondent, for it was relayed to Interstate Motor Carriers (Interstate), who then informed Beverage. Certainly in view of this evidence it was not unreasonable for the Commission to have concluded that Markel had not finally determined to exclude the complainant but that such a decision awaited more information. The Commission findings 8, 9 and 10 are, therefore, binding upon a reviewing court, *St. Andrews Development Co., Inc. v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 123, 308 A. 2d 623 (1973), the respon-

dent's contradictory evidence not withstanding, *Cf. State Real Estate Commission v. Bewley,* 1 Pa. Commonwealth Ct. 85, 272 A. 2d 531 (1971).

Markel, obviously unaware of the complainant's sex on June 10, could not at that time have been guilty of sex discrimination. The Commission found next, however, that:

> "11. On June 12, 1970, Interstate notified Markel that 'Nettie M. Renoll' was a woman and submitted in behalf of Beverage 'redeeming features' of the strongest kind and urged Markel and the Respondent to permit Complainant to continue as a driver.

> "12. Respondent's decision to prohibit Complainant from driving a truck for Beverage was made with the knowledge that Complainant was a woman."

Again, the evidence supports these findings. Interstate responded to Markel's request by letter of June 12, 1970 and corrected Markel's misapprehension as to the complainant's sex and presented many of what it considered "redeeming features" in her case. Interstate said: "It seems Miss Renoll, despite her gender and age, is highly qualified. . . . Mr. Osborne [of Beverage] personally gave her a driving test and was extremely impressed with her abilities. . . . She obviously is a damn good driver and employee, and you know how difficult it is to find people like that in this day and age." Afterwards, Wilson of Markel underwriting discussed the matter with the production department and in his words "made the decision I wanted this person excluded." On June 18, 1970, production informed Interstate that "[u]nderwriting has completely reviewed the disclosures and unfortunately, have taken a position where they feel they would rather not have Renoll as a driver. . . . We would appreciate having some action taken by no later than July 10 that this driver is no longer in the employment of the assured." Interstate then telephoned Markel requesting that the complainant be permitted to remain a driver. And,

again in response, Markel wrote Interstate that the underwriting department was "just unwilling to allow her to continue as a driver . . . ." Beverage complied and relieved the complainant of all driving duties as of July 10, 1970. Obviously, therefore, the Commission's findings 11 and 12 are sufficiently supported in the record.

The respondent's primary contention, however, is that the decision to exclude the complainant from insurance coverage was based upon legitimate criteria designed to eliminate high risk drivers under the age of 25 rather than upon her sex. The Commission found otherwise.

> "13. Respondent's explanation that this decision with regard to Complainant was based solely on the fact that the Complainant was under twenty-five and was consonant with Respondent's policy of taking a 'much closer look at a driver, under twenty-five who is involved in an accident' is belied by the record:
>
>> "a. During the relevant period, at least four male Beverage drivers under twenty-five had been involved in accidents for which they were deemed liable and had not been canceled by Respondent. Respondent offered no acceptable explanation for the disparity in treatment between these males and the Complainant, the sole female driver employed. . . . Complainant was the only driver canceled after an accident during the period relevant hereto. . . ."

Finding 13 went on to describe the four incidents and then the Commission concluded:

> "14. Respondent's instruction to Beverage to relieve Complainant of all driving duties coerced and compelled Beverage to discharge Complainant."

The Commission's finding number 13 is substantially supported in the record. Beverage did employ four male drivers under the age of twenty-five who were at one time or another involved in accidents. Markel claims to

have been unaware of their ages, a fact which itself supports the Commission's findings. Accidents suffered by two of these drivers were not covered under the respondent's policy so that arguably their accidents and their ages might not have come to Markel's attention. Again, however, Markel's unawareness belies the existence of a policy to avoid the high-risk-under-twenty-five year old driver. Moreover, of the other two drivers involved in accidents, both were covered by the respondent, and no acceptable explanation was offered to explain Markel's failure to exclude them from coverage. Under the circumstances indicated in this record, the evidence adequately and reasonably supports the Commission's finding that Markel did not adhere to its alleged underwriting policy and that the decision to exclude the complainant was not based upon such a policy, but rather, was based upon her sex identity. It follows, therefore, that the Commission's finding number 14 was reasonable and must be sustained. *St. Andrews Development Co., Inc. v. Pennsylvania Human Relations Commission, supra.* Accordingly, we affirm that portion of the Commission's order directing the respondent to cease and desist from discriminating on the basis of sex.

This brings us to the issue of damages. The Commission has directed the respondent to pay the complainant all lost earnings plus interest for the period running from her date of discharge, July 10, 1970, to the expiration of the insurance policy between Beverage and the respondent on February 18, 1972 at which time she was rehired. The respondent challenges the Commission's authority to award lost earnings and its authority to order anyone other than the employer to pay the same. Section 9 of the Pennsylvania Human Relations Act, 43 P.S. §959 provides in part:

> "If, upon all the evidence at the hearing, the Commission shall find that a *Respondent* has engaged in or is engaging in any unlawful discriminatory prac-

tice as defined in this Act, the Commission shall state its finding of fact, and shall issue . . . an order requiring such *Respondent* to cease and desist from such unlawful discriminatory practice and *to take such affirmative action including but not limited to hiring, reinstatement or upgrading of employees, with or without back pay. . . .*" (Emphasis added.) In *Zamantakis v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 107, 308 A. 2d 612 (1973), this Court held that the statute granted the Commission no power to order affirmative action by awarding compensatory damages for mental anguish and humiliation resulting from discrimination. *Accord, Straw v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 99, 308 A. 2d 619 (1973); *St. Andrews Development Co., Inc. v. Pennsylvania Human Relations Commission,* 10 Pa. Commonwealth Ct. 123, 308 A.2d 623 (1973). Our concern in those cases, of course, was the fact that the General Assembly had not specifically granted authority to compensate for humiliation and mental anguish and to do so by judicial fiat would result in "an unduly heavy force on the side of the proponents of damages" because the Commission and its employees are the investigators, the prosecutors, the judges and the jury. Without a readily and reasonably ascertainable formula by which to determine such damages, an award would be arbitrary at best and offends the notions of due process. *Zamantakis, supra,* 10 Pa. Commonwealth Ct. at 117, 308 A. 2d at 616. In cases of employment discrimination, however, an award of lost pay is clearly permissible. *Freeport Area School District v. Pennsylvania Human Relations Commission,* 18 Pa. Commonwealth Ct. 400, 335 A.2d 873 (1975). The statute directly authorizes such action, and the award of back pay is a readily and reasonably ascertainable figure.

Clearly in this case the award of lost earnings amounted to an award of back pay. The strength of the

respondent's objection to the award lies in the statutory language which permits affirmative action to hire, reinstate, or upgrade *employees* with back pay. Obviously, the respondent insurance company cannot hire, reinstate or upgrade the complainant in this case, for it was not at any time her employer. The respondent, therefore, argues that it should not be ordered to pay back salary. The General Assembly, however, most clearly expressed that it intended any person *"whether or not an employer"* to be held responsible for unlawful discriminatory employment practices. Section 5(e) of the Pennsylvania Human Relations Act, 43 P.S. §955(e). (Emphasis added.) The General Assembly also clearly authorized the Commission to order affirmative action on the part of a "respondent," not merely on the part of an employer. Moreover, within such action the General Assembly expressly contemplated the awarding of back pay. To relieve this respondent of paying lost earnings merely because it cannot reinstate or upgrade the complainant, as an employer could, would be to distort beyond reason the purpose of the Act. It could be argued also that the respondent actually *is* in a position to "upgrade" the complainant as an employee of Beverage by ceasing its unlawful discrimination, for the notion of "upgrade" most certainly refers to terms, conditions, and privileges of employment, and a condition of employment as a truck driver here was effective insurance coverage and the absence of such coverage is attributable to the respondent.[3] Having been ordered to cease these discriminatory practices, the respondent, although not an employer, was ordered in effect to upgrade the complainant's employment status to the equivalent status of the male employees.

---

3. It is worthy to note that Beverage, the complainant's employer, reinstated Renoll as a driver, once the respondent's policy held by Beverage expired.

We must conclude, therefore, that the statute authorizes the Commission to order a respondent, whether or not an employer, to compensate a complainant through the payment of back pay where that respondent is responsible for the discriminatory employment practice.

The question remains as to the amount to be awarded. At the time of her discharge on July 10, 1970 and prior thereto, the complainant had been driving on a part-time basis for Beverage. Payroll records for a twenty-nine week representative period running from June 6, 1969 to December 18, 1969, revealed total earnings by the complainant amounting, by our calculations, to $3,973.13[4] or an average weekly wage of $137. Although the complainant testified personally that her calculations based on these records resulted in an average weekly wage of $99.30, the records speak for themselves, and we cannot fault her for an erroneous calculation as the respondent would have us do. The base pay from which the complainant's lost earnings must be calculated, therefore, is $137 per week.

From May 15, 1971, when a *full-time* driver was allegedly hired to replace the complainant, to February 18, 1972, when respondent's coverage of Beverage expired, the Commission calculated the lost earnings at $200.29 per week, the base pay of the full-time driver. The Commission concluded, of course, that the complainant would have begun full-time work at that time and would have received the same average wage as the new driver, and the testimony supports the Commission's conclusion. An additional truck had been purchased at that time and an additional driver was needed for full-time duty. The complainant's employer testified, moreover, that the complainant would then have been placed on full-time duty had she been available. And it might be noted that the

---

4. The Commission erroneously reached a total figure of $3,954.32 for an average weekly wage of $136.04.

fact that she was hired on a full-time basis once the respondent's policy with Beverage expired supports the credibility of the employer testimony in this respect. We cannot be certain that the complainant would have earned the exact sum of the actual full-time driver employee but that figure is, no doubt, a reasonable means to determine the amount she would probably have earned had she been driving during that time, and it forms a proper basis for calculating lost earnings.

The Commission found that, since the complainant's discharge, she earned $560.00 in other employment in 1970, $1,556.40 in 1971 and $450.00 in 1972 up to February 18, 1972. These findings are supported in the record and are not contested. Her lost earnings for the period July 10, 1970 to February 18, 1972 recomputed on the basis of average earnings of $137 per week until May 15, 1971 and $200.29 per week thereafter, less actual earnings, would amount to $2,728.00 for 1970, $7,719.46 for 1971, and $1,052.03 for 1972.

## ORDER

AND NOW, this 25th day of June, 1975, the decision and paragraphs 1 and 3 of the order of the Pennsylvania Human Relations Commission are affirmed and paragraph 2 of the order is modified as follows: "2. The Respondent, Transit Casualty Insurance Company, shall pay the Complainant, Nettie M. Renoll, the sum of $2,728.00 for the year 1970, $7,719.46 for the year 1971, and $1,052.03 for the year 1972 representing Complainant's loss of earnings as a result of Respondent's unlawful conduct, plus all accrued interest at a rate of 6% per annum."

---

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

I dissent from that portion of the majority opinion which concludes that section 9 of the Act read together with section 5(e) affords the Commission authority in this case to award to complainant loss of earnings to be

paid by respondent, which was not her employer. The majority structures this conclusion on the theory that an award of lost earnings "amounted to an award of back pay." I cannot agree. An award of back pay necessarily entails an employer-employee relationship, which does not exist here. An award of lost earnings—measured by loss of pay—is a recognized compensable damage. This Court has repeatedly held that the Commission lacks authority in law to award compensatory damages incident to adjudications finding a respondent to have acted in violation of the Act. *Zamantakis v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 107, 308 A.2d 612 (1973).

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

My reading of the record does not satisfy me that the Human Relations Commission's (Commission) crucial finding of fact No. 13 is supported by substantial evidence. Respondent, contrary to the finding, did offer an "acceptable explanation for the disparity in treatment between these males and the complainant."

The record discloses that Lendell Gerber had an accident on February 18, 1969, and at that time Beverage Transportation, Inc. (Beverage) was insured not by respondent but by Pennsylvania National Insurance, and there was no evidence that respondent was aware of this accident. On June 3, 1970, Ron Shiley had an accident involving only Beverage's collision insurance, which policy was issued by American Fidelity First Insurance Company, and there was no evidence that respondent was aware of this accident. James Kennedy, when 24 years and 11 months of age and while driving for Beverage, was involved in an accident during March of 1971. There was no evidence that the age of this driver was called to the attention of respondent since his 25th birthday was on April 20, 1971.

I conclude that this record supports *only* the conclusion that the decision to exclude the complainant from insurance coverage was based upon legitimate criteria designed to eliminate high-risk drivers under the age of 25 rather than upon a basis of her sex.

Therefore, it follows that I would dissent from the Commission's order that respondent pay complainant $12,147.03 as damages. In addition, I hold the view that Section 9 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §959 (Supp. 1974-75),[1] does not permit the award of loss of earnings to one not in the employment of the respondent.

---

1. Section 9 provides in pertinent part:

"If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue . . . an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action including but not limited to hiring, reinstatement or upgrading of employes, with or without back pay . . . as, in the judgment of the Commission, will effectuate the purposes of this act . . . ."