Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission *v.* Hempfield Township and Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 30, Appellants.

Argued January 7, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James N. Falcon,* with him *James R. Kelley,* for appellant.

*Elisabeth S. Shuster,* Assistant General Counsel, with her *Sanford Kahn,* General Counsel, for appellee.

OPINION BY JUDGE WILKINSON, February 17, 1976:

Claimants-appellees, two female clerks employed by appellant, filed an amended complaint with the Pennsylvania Human Relations Commission alleging that appellant and Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union 30,[1] "individually and in concert have, in the past, and continue through the

---

1. At the conclusion of the complainants' case, a motion was made that the charges against Local 30 be dismissed. This motion was granted without objection or exception.

present time, to allow the Complainants and other female employees of Hempfield Township lower yearly pay raises than for male employees, solely because of the sex of the Complainants, female."

The matter came on for hearing where some 200 pages of testimony and five exhibits were presented. The Commission found in favor of the complainants-appellees ordering appellant to cease and desist from discrimination on the basis of sex, to pay complainants-appellees a sum equal to the wages lost by not receiving non-discriminatory wages from 1970 through 1973, with interest, and to adjust the present wage scales for clerical employees so that present wages reflect annual increases since 1969 equivalent to those received by road maintenance employees. The propriety of the order has not been challenged other than it is not supported by the evidence.

Since December, 1969, all of appellant's clerical help have been female and all road maintenance employees have been male. For the purpose of wage contracts, the employees are classified in these two groups. Since 1969 the following increases in wages have been granted, broken down into hourly rates:

|      | Clerical | Road Maintenance |
|------|----------|------------------|
| 1970 | $ .07    | $ .30            |
| 1971 | .07      | .30              |
| 1972 | .20      | .30              |
| 1973 | .18      | .30              |

The sole issue raised by appellant is whether the record contains substantial evidence to support the Commission's fifth conclusion of law:

"5. The Township's granting larger annual increases to all of the road maintenance employees, all men, than that received by all of the clerical employees, all women, for reasons of the sex of the respective employees within each department, constitutes a violation of section 5(a) of the Pennsylvania Human Relations Act."

Judge MENCER, speaking for the Court in *A. P. Weaver and Sons v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 499, 504-05, 284 A.2d 515, 517-18 (1971), quotes at length from an article by Dean E. Blythe Stason of the University of Michigan Law School, entitled *"Substantial Evidence" in Administrative Law*, 89 U. Pa. L. Rev. 1026 (1941). Judge KRAMER, speaking for the Court in *St. Andrews Development Co., Inc. v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 123, 127-28, 308 A.2d 623, 625 (1973), quotes the following from the same article:

> " '[S]ubstantial evidence' should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be set aside." 89 U. Pa. L. Rev. at 1038. (Emphasis in original.)

Applying that test to this record we find that a reasonable man, acting reasonably, might have reached the decision reached by the Commission and we must, therefore, affirm.

There were many clear contradictions between the testimony for complainants-appellees, and the testimony for appellant. The Commission chose to believe the testimony of the complainants-appellees and their witness and found:

> "22. Supervisor Bricker told Field Representative Kathleen Guinn that, 'A woman cannot negotiate like a man who has a family to support,' as an explanation for the disparity in increases. Commissioner Bricker is Superintendent of Roads for the Township.

"23. Supervisor Miller told Complainant Nist, 'If you are able to put on overalls and take a shovel and dig a ditch, then you would get the same as the men.' Mr. Miller is employed by the township in the road maintenance department as a road master, responsible for keeping time records of employees.

"24. Supervisor Morrazza, who voted on these agreements, told Complainant Westwood that office girls should not receive as much in pay raises as men since they do not have families to raise."

All of these statements were denied by appellant's witnesses, but clearly the credibility of the witnesses is for the Human Relations Commission and not for this Court to determine.

The appellant presented its case before the Commission on the basis that the wage increase disparity grew out of the difference in duties, comparable wages paid for comparable work in other areas, and the cost of living. The Commission expressly rejected this explanation as it relates to different duties in Finding of Fact 21:

"21. Such justifications do not account for the fact that equal flat rate increases were granted to all employees in each department without regard to the specific job performed, and that the road maintenance employees received the same increase each year."

Certainly it is clear from the record that a substantial, if not the principal, reason for the wage increase was the rise in the cost of living. For example, one of appellant's witnesses testified:

"Q. Mr. Buford, the further findings that you had gathered and presented to the Board of Supervisors, including myself as a negotiator, did these findings influence your decision as to what the Township should offer and did that constitute the basis of the authority that you gave my firm as negotiators for the Township?

"A. You are speaking of the relationship between the cost of living and the comparable wage rates?

"Q. Yes.

"A. Yes."

Certainly a cost of living increase would apply equally to females and males whether clerks or maintenance personnel.

Appellant points out that if you include a raise given the clerical employees just prior to the new contract in 1969, there is not great disparity in the increases. The reason it is inappropriate to include that increase is because it is quite clear that it was given due to the fact that a clerical position previously held by a male, was eliminated and his work distributed to the remaining clerical personnel. Indeed, introducing this element into the case damages rather than strengthens appellant's position. The testimony shows that the raises given clerical personnel while a male was employed in that department and the raises given road maintenance employees differed by only a cent or two. However, immediately following the male clerk's leaving, the difference in wage raises jumped to 23 cents.

Accordingly, we enter the following

ORDER

Now, February 17, 1976, the final order of the Pennsylvania Human Relations Commission, dated June 2, 1975, in the above matter, is affirmed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. Here the wages to be paid the employees in question are a part of the collective bargaining agreement between Hempfield Township and Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 30.

It is my view that these negotiated provisions are permissible subjects of collective bargaining and do not

violate or restrict the rights of any employee under the Constitution or under any applicable laws or regulations. The variances in wages for different classification of employees was the result of collective bargaining in which the employees, here held discriminated against by the outcome of that collective bargaining, were coequal participants.

The majority opinion presents a strong brief for a conclusion that the terms of the negotiated agreement produces further wage inequities between clerical and road maintenance workers, but this is at most a result of the collective bargaining and not employer discrimination.