The School District of the Township of Millcreek, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Appellee.

256

Argued October 27, 1976, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*John W. Beatty,* with him *Knox, Graham, Mc-Laughlin, Gornall and Sennett, Inc.,* for appellant.

*Katherine H. Fein,* Assistant General Counsel, for appellee.

OPINION BY JUDGE CRUMLISH, JR., January 20, 1977:

On March 5, 1973, Linda Jean Richards (Complainant) filed a complaint with the Pennsylvania Human Relations Commission (Commission) alleging that Millcreek School District and John Sandel, its Superintendent (Appellants), refused to compensate her with equal supplemental wages as coach of the girls' varsity tennis team while granting the male coach of the boys' varsity tennis team a supplemental wage $300.00/$310.00 higher than Complainant for performing a substantially same or similar job. Complainant further alleged that Appellants discriminate against women as a class in the payment of supplemental wages to female coaches and the number of varsity sports offered female students because of their gender. On September 5, 1973, the complaint was amended to allege a continuing violation. Complainant alleged that these actions violate Section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §951 (Act).

An investigation into the allegations contained in the complaint was made by representatives of the Commission and a determination was made that probable cause existed to credit the allegations of the complaint. The Commission endeavored to eliminate the unlawful practice complained of by conference, conciliation and persuasion. These endeavors were unsuccessful and, pursuant to Section 9 of the Act, a hearing on the merits of the complaint was convened.

The hearing panel, upon consideration of all of the testimony presented before it by both parties, recommended that the Commission find in favor of Complainant.

The findings of fact entered in this matter are detailed and lengthy and will aid our review. For this reason, we list them as follows:

## "FINDINGS OF FACT

"1. The Complainant herein is Linda Jean Richards, a female teacher, who resides at 2659 West Sixth Street, Erie.

"2. The Respondent herein is Millcreek School District, Complainant's employer. A second Respondent is John Sandel, Superintendent. No testimony was presented concerning Mr. Sandel. All references to the Respondent are to Millcreek School District.

"3. Complainant has been employed as a teacher by the Respondent at McDowell High School since 1968. For three years, from the fall of 1968 through the spring of 1971, Complainant served as the Coach of the Girls' Tennis Team at McDowell High School when it was an extramural team.

"4. The Girls' Tennis Team became a varsity team as opposed to an extramural team in the 1971-72 school year.

"5. The Boys' Varsity Tennis Team has been in existence for ten to fifteen years.

"6. Kay Dennis was the first (Head) Coach of the Girls' Varsity Tennis Team in 1971-72. She scheduled eleven matches during the fall and spring of that school year.

"7. Complainant applied for and received the position of Girls' Varsity Tennis (Head) Coach for the 1972-73 and 1973-74 school years.

"8. Complainant did not receive credit for her three years of coaching the extramural team.

"9. Complainant's salary as Girls' Varsity Tennis (Head) Coach was significantly less than the salary of the male head coach of the Boys' Varsity Tennis Team. Complainant received $250 for her first year as opposed to $550 for a first year male coach, a difference of $300. Complainant received $320 for her second year as opposed to $630 for a second year male coach, a difference of $310.

"10. Complainant objected to the salary difference to the School Board and was denied an equalization of salary.

"11. Complainant indicated in writing her continued protest over the unequal salary when she signed her contract for the 1972-73 school year.

"12. All of Complainant's coaching duties were listed in the Coaches' Handbook.

"13. The duties of all of the Head Coaches, both male and female, were the same. All duties were listed on page two of the Coaches' Handbook. Ronald L. Manchester, Supervisor of Physical Education and Athletics, responding for Respondent, told the Commission's Investigator, Kathleen Guinn, that the Head Coach had no duties other than those set forth on page two of the Coaches' Handbook.

"14. Coaches had many other duties in addition to the actual playing of competitive matches.

"15. Complainant arranged the tennis matches for the 1972-73 school year.

"16. In 1972-73 when Complainant scheduled the tennis matches, the Girls' Varsity Tennis Team played twenty-two matches. Six matches were played in the fall and sixteen matches were played in the spring.

"17. Of the eight teams with whom matches were scheduled in 1972-73, three were played twice, four were played three times and one was played four times.

"18. Only three matches, those against Behrend College, would have been sanctioned under P.I.A.A. rules.

"19. Ronald L. Manchester, Supervisor of Physical Education and Athletics, scheduled the tennis matches for the 1973-74 school year.

"20. At Complainant's urging, Mr. Manchester contacted all of the (tennis) coaches in the area in the spring of 1973. As a result of this meeting, a five-school league was set up. League play started in the fall of 1973.

"21. In 1973-74 when Mr. Manchester scheduled the tennis matches, the Girls' Varsity Tennis Team played only ten matches. Eight matches, two with each league member, were played in the fall and two matches, the district and state championship competitions were played in the spring.

"22. All matches played in the 1973-74 school year were authorized P.I.A.A. matches.

"23. Other schools play girls' varsity tennis in both the fall and the spring; some play only in the spring. The championship matches are held in the spring.

"24. In the 1972-73 school year, Complainant scheduled matches in both the fall and the spring.

"25. Ronald L. Manchester scheduled all of the League matches for the Girls' Varsity Tennis Team in the fall.

"26. Complainant agreed to go along with the season that Mr. Manchester, the Supervisor of Physical Education and Athletics, selected.

"27. Participation in varsity tennis by girls and boys was approximately the same. The estimated participation of students in varsity tennis for 1973-74 shows that there were sixteen girls and fifteen boys on the varsity tennis teams.

"28. Both the Head Coach of the Boys' Varsity Basketball Team and the Head Coach of the Girls' Varsity Basketball Team had the same duties. The duties were described on page two of the Coaches' Handbook.

"29. The Boys' Varsity Basketball Team usually plays twenty-two games per season. The Girls' Varsity Basketball Team usually plays fifteen games per season.

"30. Participation in varsity basketball by girls and boys was similar. The estimated participation of students in varsity basketball for 1973-74 shows that there were twelve girls and sixteen boys on the Varsity Basketball Team.

"31. The salary of the female Head Basketball Coach was significantly less than the salary of the male Head Basketball Coach. The female coach received from $250 to $400 as opposed to the male coach who received from $1,300 to $1,900, a difference of $1,050 to $1,500.

"32. As a result of Respondent's unlawful sex discrimination, women coaches earned significantly less than their male counterparts.

"33. As a result of Respondent's unlawful sex discrimination, Complainant suffered a loss of earnings of $610.0 which was determined as follows:

a. 1972-73—$300.00, the difference between the salary of a first year head coach of the

girls' tennis team and the salary of a first year head coach of the boys' tennis team.

b. 1973-74—$310.00, the difference between the salary of a second year head coach of the girls' tennis team and the salary of a second year head coach of the boys' tennis team.

The conclusions of law of the Commission stated:

"CONCLUSIONS OF LAW

"1. The Pennsylvania Human Relations Commission has jurisdiction over the Complainant, the Respondents and the subject matter of the complaint under the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, as amended, 43 P.S. Section 951 *et seq.*

"2. Respondent Millcreek School District's compensation of Complainant as coach of the Girls' Varsity Tennis Team by a supplemental wage that was substantially less than the compensation paid the male tennis coach for performing a substantially similar job because of her sex, female, constitutes a violation of Section 5(a) of the Pennsylvania Human Relations Act.

"3. Respondent Millcreek School District's compensation of all female coaches by a supplemental wage that was substantially less than the compensation paid their male counterparts for performing a substantially same or similar job because of their sex, female, constitutes a violation of Section 5(a) of the Pennsylvania Human Relations Act.

"4. The complaint does not cite the section of the Pennsylvania Human Relations Act that the Respondent allegedly violated by not offering female students the amount of varsity sports offered male students, because of their sex, female. Because of this deficiency, this final allegation must be dismissed.

"5. No case was presented against Respondent John Sandel, Superintendent; therefore, the complaint against him must be dismissed."

Our review of the Commission's findings is controlled by Section 10 of the Act, 43 P.S. §960, which dictates that the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.1 et seq., standard of review is applicable, to wit: a determination of whether the Commission's adjudication is not in accordance with law or any finding of fact necessary to support the adjudication is not supported by substantial evidence.

Presently before us are four issues raised by Appellants:

(1) Was sex discrimination as codified in Section 5(a) of the Act made out as a matter of law on the facts of the instant case?

(2) Does the Commonwealth have the power to assess and award damages, and was the monetary assessment of $610.00 damages or back pay?

(3) Did the Commission err by entering its order on a Sunday in violation of 44 P.S. §1?

(4) Should the union to which Complainant belonged, and which negotiated the wage rate now claimed to be discriminatory, be joined in this action as an indispensable party?

Turning to Appellants' initial issue, we hold that the facts of record as found by the Commission do not warrant a legal finding of discrimination under Section 5(a) of the Act.

Crucial to our determination of no discrimination in this matter is finding of fact no. 29, which in essence stated that the boys' team played twenty-two games while the girls' team played fifteen games. The finding is accurate as stated but disregards testimony of record underlying these final game totals.

Simply stated, as we understand Complainant's position as adopted by the Commission in finding of fact no. 29 and other similar findings, the discrimination evolves from disparate pay for substantially similar coaching services. Our reading of the record, however, does not support a finding that the coaching services supplied were substantially similar. The record sets forth the fact that Complainant's original employment contract went into effect during the summer months of 1972. Her salary at that time was $250.00 based primarily upon the fact that the girls' varsity tennis team had been instituted during the second half of the previous year and the previous girls' varsity tennis coach had scheduled only five interscholastic matches.

The record also documents the fact that after Complainant began her coaching services at the salary of $250.00 she, on her own, scheduled some 22 matches during the school year 1972-73. Following the increase of her duties, she naturally desired increased pay. When her increased salary demand was rejected, she scheduled only eight matches during the following school year 1973-74, with no matches whatsoever being scheduled for the spring of 1974.

Finally, when a new employment agreement was negotiated on her behalf by the teachers' union for the school year 1974-75, the girls' tennis coach's salary was equalized with that paid to the coach of the boys' tennis team on the theory that there was enough competition available for the girls' team to justify the full pay.

From these facts of record, it is clear to us that we have a situation wherein an employe took a coaching job with full knowledge of the salary paid. Most certainly, Complainant had the good of the program in mind when she sought to increase the number of

competitive matches played by her team. But, to seek additional compensation under the guise of sex discrimination in these circumstances is a claim which cannot be justified. We hold as a matter of law that the facts as found do not give rise to a Section 5(a) violation and reverse the Commission on that ground.

Although we bottom our decision on the first issue presented, we feel it necessary to comment upon the assessment of the $610.00. We do so because of the seemingly unsettled state of the law of assessment of damages versus award of back pay by the Commission.

Complainant's brief justifies the award of $610.00 as "back pay" as provided in Section 9 of the Act, 43 P.S. §959:

> [A]ffirmative action including but not limited to hiring, reinstatement or upgrading of employees with or without *back* pay . . . as in the judgment of the Commission, will effectuate the purpose of this Act.

There is little doubt that this Court has upheld the validity of back pay awards, *see Pennsylvania Human Relations Commission v. Hempfield Township,* 23 Pa. Commonwealth Ct. 351, 352 A.2d 218 (1976) ; *Pennsylvania Human Relations Commission v. Transit Casualty Insurance Company,* 20 Pa. Commonwealth Ct. 43, 340 A.2d 624 (1975), and Complainant suggests that the portion of the Commission's final order requiring the Township to adjust supplemental wages paid *all* female athletic coaches to equal the wages paid male coaches is also within the Commission's authority as dictated by *Pennsylvania Human Relations Commission v. Alto-Reste Cemetery Park Association,* 453 Pa. 124, 306 A.2d 881 (1973), and the recent decision in *Pennsylvania Human Relations Commission v. Freeport Area School District,* Pa.    , 359 A.2d 724 (1976).

Appellants argue that this award is in reality the award of damages forbidden by this Court in *Midland Heights Homes v. Pennsylvania Human Relations Commission,* 17 Pa. Commonwealth Ct. 563, 568, 333 A.2d 516, 519 (1975). We there stated:

> We repeat here what we stated in Loyal Order of Moose Lodge No. 145 v. Pennsylvania Human Relations Commission, 16 Pa. Commonwealth Ct. 433, 382 A.2d 180, 184 (1974). '[T]he award of damages by the Commission was improper. The cases cited above all hold that the Commission lacks the power to award monetary damages and those holdings are presently the law in this Commonwealth, even though the cases are on appeal to the Supreme Court. The Commission cannot ignore the law and award damages contingent upon some future action of the Supreme Court.'

Our Supreme Court has held in *Freeport Area School District,* supra, that it is proper for the Commission to grant relief to other than the named complainant if (1) the complainant alleges that such other persons have been affected by the alleged discriminatory practice and (2) such other persons entitled to relief may be described with specificity.

In reviewing this record, we note that conclusion of law no. 4 specifically states that due to the complaint being deficient in not citing the section of the Act justifying the award to all female coaches, this allegation must be dismissed. Yet, in the Commission's final order, paragraph two, Appellants are ordered to pay supplemental wages to all female coaches equal to that of their male counterparts. We cannot understand nor can we reconcile these disparate statements. Moreover, the Commission made no findings which would meet the criteria established in

*Freeport Area School District, supra,* for the award of wages. In these circumstances, the Commission erred.

Further, Complainant's reliance upon and citation of *Transit Casualty, supra,* is misleading. In *Transit Casualty,* the complainant instituted a Section 5(a) complaint against the insurer of her employer when she was discharged following a minor auto accident, which resulted in a notice of cancellation of her insurance coverage. She there contended that her discharge was in reality based on sex discrimination and sought lost earnings for the period of her unemployment.

We there held that the award of lost earnings was tantamount to an award of back pay. The award of lost earnings as back pay was an award of compensation which, but for the discharge based on discrimination, would have been paid to complainant. It was back pay in the sense that it was the monthly pay equal to that which complainant was receiving during her term of employment. In no sense was the award compensatory in that it represented the wage difference of an employe who was the subject of discrimination and one who was being paid higher wages absent the charge of discrimination.

Complainant more appropriately cites *Hempfield Township, supra,* where a complainant was awarded a sum equal to the wages lost by not receiving non-discriminatory wages over a three-year period. Although the question of whether this award was in fact representative of back pay in Section 9, 43 P.S. §959, or whether it was in fact an award of damages was not expressed in our opinion, the implicit holding which affirmed the Commission's order directing the award instructs that such an award is countenanced by the Act. Since we have forbidden the award of

damages, an award such as that entered in *Hempfield Township, supra,* is tantamount to back pay and is within the authority granted to the Commission in Section 9.

As we hold that no Section 5(a) discrimination exists in the instant case, attempts to award back pay and adjust the pay scales of other female coaches similarly situated are improper.

And, on the basis of the foregoing, we need not reach the assertions that the Commission's order is void because it was entered on a Sunday in violation of 44 P.S. §1, and that the Commission erred by failing to join Complainant's union which was responsible for negotiating the wage.

Consistent with the foregoing, we

ORDER

AND Now, this 20th day of January, 1977, the order of the Pennsylvania Human Relations Commission is hereby reversed.

---

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent. Our scope of review in appeals from adjudications of the Pennsylvania Human Relations Commission (Commission) is governed by Section 44 of the Administrative Agency Law,[1] 71 P.S. §1710.44, and is limited to a determination of whether or not the necessary findings of fact are supported by substantial evidence and whether or not the order is in accordance with law. *Leechburg Area School District v. Pennsylvania Human Relations Commission,* 19 Pa. Commonwealth Ct. 614, 339 A.2d 850 (1975). We must accept the supported facts as found by the Commission, even though we might have viewed the evidence differently and might have

---

[1] Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.1 et seq.

made different findings of fact. *Gibbs v. Civil Service Commission,* 3 Pa. Commonwealth Ct. 230, 281 A.2d 170 (1971). The majority here, it seems to me, has failed to adhere to our scope of review and, in reversing the Commission, has made its own factual determinations.

The key findings of the Commission were as follows:

13. *The duties of all of the Head Coaches, both male and female, were the same.* All duties were listed on page two of the Coaches' Handbook. (Emphasis added.)

14. Coaches had many other duties in addition to the actual playing of competitive matches.

The majority has, in effect, reviewed the evidence and found that the head coaching duties involved were not similar. The Commission's findings, however, seem to me to be clearly supported by the record (pages 26a, 59a, 82a and 83a of the printed record), which shows that for the 1972-1973 tennis season, the boys' team played 16 matches and the girls' team played 22 matches and, for the 1973-1974 tennis season, the boys' team played 14 matches and the girls' team played 8 matches. The girls' team also competed in the state championships for the 1973-1974 season and I presume, although it does not appear in the record, that the boys' team competed in the state championships for both seasons. Mr. Ronald Manchester, Supervisor of Physical Education and Athletics, testified that head coaches had many duties and responsibilities in addition to actual match competition and that these duties were contained in the handbook.

The Commission, after having found that the tennis head-coaching jobs required the performance of the same duties, and that a different salary had been

paid to the complainant, concluded that a violation of Section 5 of the Pennsylvania Human Relations Act[2] (Act), 43 P.S. §955, had occurred.[3]

It is clear that the purposes and legal requirements of Article I, Section 28 of the Pennsylvania Constitution,[4] the Equal Pay Law[5], and Section 5 of the Penn-

---

[2] Section 5 of the Act of October 27, 1955, P.L. 744, *as amended*, provides, in part, as follows:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification. . .

(a) *For any employer because of the* race, color, religious creed, ancestry, age, *sex*, national origin or non-job related handicap or disability *of any individual* to refuse to hire or employ, or to bar or to discharge from employment such individual, or *to otherwise discriminate against such individual with respect to compensation*, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required. (Emphasis added.)

[3] I must note that the salary schedules for coaching boys' and girls' tennis were equalized for the 1974-1975 season.

[4] "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. art. I, §28.

[5] Section 3 of the Equal Pay Law, Act of December 17, 1959, P.L. 1913, *as amended*, 43 P.S. §336.3 provides, in part, as follows:

(a) *No employer . . . shall discriminate . . . between employes on the basis of sex by paying wages to employes . . . at a rate less than the rate at which he pays wages to employes of the opposite sex . . . for equal work on jobs, the performance of which, requires equal skill, effort, and responsibility,* and which are performed under similar working conditions, except where such payment is made pursuant to (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex. . . . (Emphasis added.)

Section 3 of the Equal Pay Law is substantially similar to Section 6(d)(1) of the Fair Labor Standards Act of 1938, 29 U.S.C. 206 (d)(1). The cases under the federal act provide the "equal work" means only that the jobs be substantially equal in that they require

.sylvania Human Relations Act all require that there be equal compensation for equal work without regard to sex. Because the Commission found that the complainant performed a job which was substantially equal to that of her male counterpart and which required the same effort, skill and responsibility for less compensation, I would affirm the Commission's conclusion that the appellant had violated Section 5 of the Act and discriminated against the complainant on the basis of her sex.

---

the same skill, effort and responsibility. *Shultz v. American Can Co.*, 424 F.2d 356 (8th Cir. 1970) ; *Shultz v. Wheaton Glass Co.*, 421 F.2d 259 (3rd Cir. 1970).