West Middlesex Area School District, Petitioner, *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission and Vickie Vee Peterson, Respondents.

Argued September 13, 1978, before President Judge
Bowman and Judges Crumlish, Jr., Mencer, Rogers,
Blatt, DiSalle and Craig. Judges Wilkinson, Jr.
and MacPhail did not participate.

*P. Raymond Bartholomew,* with him *Cusick, Madden, Joyce and McKay,* for petitioner.

*James D. Pagliaro,* Assistant General Counsel,
with him *Sanford Kahn,* General Counsel, for respondent.

Opinion by Judge Craig, December 6, 1978:

Petitioner West Middlesex School District appeals
from a final order of the Pennsylvania Human Relations Commission (Commission) (June 3, 1977—Dkt.
No. E-5642). The Commission found that the school
district engaged in discriminatory maternity leave
practices in violation of Section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955,
P.L. 744, *as amended,* 43 P.S. §955(a) (the Act), and

ordered the district to pay complainant Vicki Vee Peterson $4,100.00 in back wages and $192.00 for lost benefits.

The facts are not in dispute. Complainant was an English teacher in the West Middlesex School District during the 1971-1972 school term. The Board of School Directors (Board) approved her request for maternity leave, which began at the end of the 1972 Spring semester.

By letter dated December 14, 1972, complainant requested that the Board allow her to return to her former position on the first school day of the next semester, in January 1973. A physician certified that she was physically able to resume employment as of December 7, 1972. At the Board's meeting on January 8, 1973, her request to return to work for that semester was refused. She did return to her teaching position in September, 1973.

The maternity leave policy actually in effect at the time of complainant's leave, adopted September 13, 1971, stated:

> *The maternity leave shall be for one calendar year* beginning with the first day of the leave, except the employee may not begin her duties again until the first day of the semester or school year following the completion of the calendar year of the maternity leave. . . . in unusual cases the length of the maternity leave may be shortened at the discretion of the Board. (Emphasis added.)[1]

---

[1] The school district's maternity leave policy was revised February 10, 1975, pursuant to the Supreme Court's decision in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1973), which outlined constitutional standards for maternity leave commencement policies. The revised policy, in pertinent part, reads:

A professional employee who has taken maternity leave shall be eligible to return to work no later than the begin-

This policy was apparently applied to complainant according to its terms, requiring a minimum leave of twelve months for maternity. Resumption of work was deferred until the next school year, rather than the next semester.

The school district urges this Court to reverse the Commission's finding that its maternity re-employment policy was discriminatory. The district contends that its maternity re-employment policy was consistent with complainant's rights under the Act and guidelines in effect on December 19, 1970, at 1 Pa.B. 707. Section 955(a) of the Act, 43 P.S. §955(a) provides:

> It shall be an unlawful discriminatory practice . . . (a) for any employer because of . . . sex . . . to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment. . . .

We note that the guidelines on which the school district relies, at 1 Pa.B. 707, were amended at 1 Pa.B. 2359 (December 25, 1971). Those amended guidelines provided that:

> Women shall not be penalized in their terms or conditions of employment because they require time away from work on account of childbearing. . . . *The conditions applicable to childbirth leave and to return to employment may be in accordance with the employer's regular leave policy* . . . she shall not be required to leave at the expiration of any arbitrary time

---

ning of the first full academic term commencing after her physician certifies in writing that she is physically capable of performing her duties.

Although this new version cannot be involved in the holding here, the Commission regarded it as discriminatory also. It seems to be afflicted with the same infirmity as its predecessor, in that it applies to maternity leave only.

period during pregnancy and may continue to work as long as she is capable of performing the duties of her job. (Emphasis supplied.)

Counsel agreed, at argument, that the further amended guidelines, at 5 Pa.B. 21, May 17, 1975, are not applicable.

Our scope of review in appeals from final orders of the Commission is governed by Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.44 which limits us to a determination of whether the necessary findings of fact are supported by substantial evidence and whether or not the order is in accordance with law.

This Court has interpreted Section 955(a) of the Act's provision against sex discrimination to mean that policies or procedures which are based on the category of pregnancy are, in fact, sex-based classifications, holding:

. . We believe that since pregnancy is unique to women a disability plan which expressly denies benefits for disability arising out of pregnancy is one which discriminates against women employees because of their sex.

*Anderson v. Upper Bucks County Area Vocational Technical School*, 30 Pa. Commonwealth Ct. 103, 110, 373 A.2d 126, 130 (1977).

Our Supreme Court in *Cerra v. East Stroudsburg Area School District*, 450 Pa. 207, 299 A.2d 277 (1973), holding that a school board policy requiring the resignation of a pregnant employee no later than the end of the fifth month of pregnancy was discriminatory, said:

Mrs. Cerra and other pregnant women are singled out and placed in a class to their disadvantage. They are discharged from their employment on the basis of a physical condi-

tion peculiar to their sex. This is sex discrimination pure and simple.

*Cerra, supra,* at 213, 299 A.2d at 280.

We followed the principle of *Cerra* in *Freeport Area School District v. Pennsylvania Human Relations Commission,* 18 Pa. Commonwealth Ct. 400, 335 A.2d 873 (1975).

The work resumption procedures for maternity leaves embodied in the West Middlesex School District's policy involved the discrimination which Section 955(a) prohibits.

The stipulations of fact confirm that the school district had no leave policy for other kinds of disabilities. The only leave policy, where an employee went beyond accumulated sick leave, was that for maternity leave.

The school district asks this Court to assume that all disability leaves taken without or beyond accumulated sick leave would have been treated (had any cases occurred) the same as maternity leaves, and thus, that any employee taking a leave beyond accumulated sick leave, regardless of the disability necessitating the leave, would have been subjected to the same restrictions.

We cannot make any such assumption. There is no basis in the evidence for it, only the district's claim, as to cases which never arose.

Hence the proof does not rest merely upon an absence of evidence from the complainant's side, a state of the record held insufficient to establish discrimination in *J. Howard Brant, Inc. v. Pennsylvania Human Relations Commission,* 15 Pa. Commonwealth Ct. 123, 324 A.2d 840 (1974). Here the affirmative proof is that the only adopted limitation on return to work after leave was in fact confined to maternity cases. The finding of discrimination was supported by substantial evidence.

The district further asks this Court to find that the Commission exceeded its authority by including in the award the sum of $192.00, the amount complainant expended to maintain her medical and hospitalization insurance policies while she was on forced leave, an amount which would have been paid by the district had she been actively employed.

Section 9 of the Act, 43 P.S. §959, provides the Commission with broad remedial powers, which this Court has held includes authority to award back pay to a successful claimant. *Freeport Area School District v. Pennsylvania Human Relations Commission, supra.* That section, in pertinent part, states:

(T)he Commission . . . shall issue . . . an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action including but not limited to hiring, reinstatement or upgrading of employes, with or without back pay, . . . as, in the judgment of the Commission, will effectuate the purposes of this act. . . .

The school district contends that the issue of whether the Commission may award claimant the amounts she expended for insurance premiums is one of definition: *i.e.,* insurance premiums as "fringe benefits" are simply not back pay, which term the school district claims has been limited to "lost earnings" or "wages lost." For this limited definition of back pay, the district relies on cases where the issue of insurance premiums was not before the court. *School District of the Township of Millcreek v. Pennsylvania Human Relations Commission,* 28 Pa. Commonwealth Ct. 255, 368 A.2d 901 (1977); *Pennsylvania Human Relations Commission v. Transit Casualty Insurance Company,* 20 Pa. Commonwealth Ct. 43, 340 A.2d 624 (1975).

Those cases do not hold that back pay must be limited to lost wages. They only hold that an award of lost earnings is within the concept of back pay.

There is nothing in the Act or in the case law which limits "back pay" to the narrow scope for which the district contends. It is clear that, but for the discriminatory practice of the school district, complainant would have been denied neither her salary nor her insurance premiums.

Of persuasive value, we note that the federal courts regard the similar back pay remedial provisions of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(g), as including more than straight salary. "Interest, overtime, shift differentials, and fringe benefits such as vacation and sick pay are among the items which should be included in back pay." *Pettway v. American Cast Iron Pipe Company,* 494 F.2d 211, 263 (5th Cir. 1974).[2]

Moreover, Section 9 of the Act, as above quoted, clearly allows remedial "affirmative action including but not limited to . . . reinstatement . . . with or without back pay . . . ," leaving to the judgment of the Commission the determination of what action will effectuate the purposes of the Act. Such broad terms support relief which gives the employee what she would have had if restored to work on a timely basis.

We therefore hold that the Commission did not exceed its authority by reimbursing claimant for the cost of insurance premium, as well as awarding lost earnings.

We therefore affirm the Commission's final order, requiring the district to award claimant $4,292.00 and

---

[2] *See Bowe v. Colgate-Palmolive,* 489 F.2d 896 (7th Cir. 1973) (vacation, sick pay and bonus) ; *Schattman v. Texas Employment Commission,* 330 F. Supp. 328 (W.D. Tex. 1971), *cert. denied,* 409 U.S. 1107 (1973), (sick and vacation leave).

ordering the district to adopt a nondiscriminatory maternity leave policy.

ORDER

AND Now, this 6th day of December, 1978, the final order of the Pennsylvania Human Relations Commission, dated June 3, 1977, is affirmed.