Opinion by
Judge Crumlish, Jr.,
On July 21, 1972, the Pennsylvania Human Relations Commission (Commission) initiated a complaint against the Leechburg Area School District (Appellant) alleging that certain provisions of the Appellant’s maternity leave policy discriminated against females in violation of *618 Section 5(a) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §955(a) (Supp. 1974-1975) (the Act).[1] The Commission objected to those provisions of the Appellant’s maternity leave policy which required a teacher to begin a maternity leave without pay at the end of the sixth month of pregnancy; limited such leave to married pregnant teachers; and required a teacher to teach at least one year between leaves. Following a pre-hearing conference at which attempts at conciliation failed, the parties entered into a stipulation of facts upon which the Commission would base its decision. On April 30, 1974, the Commission found the above provisions to be violative of Section 5 (a) of the Act and ordered Appellant to eliminate these provisions and formulate new policies in conformity with regulations of the Commission.
Hence this appeal.
Our review in appeals of this nature is limited to determining whether the Commission order is in accordance with law, and whether the findings of fact necessary to sustain the order are supported by substantial evidence. J. Howard Brandt, Inc. v. Pennsylvania Human Relations Commission, 15 Pa. Commonwealth Ct. 123, 324 A. 2d 840 (1974). As the facts have been stipulated, we must only decide whether Appellant’s maternity leave policies constitute unlawful sex discrimination in the terms and conditions of employment under Section 5(a) of the Act.
*619 Appellant concedes that its requirements that a teacher begin maternity leave at the end of her sixth month of pregnancy cannot stand in the face of the Supreme Court’s decision in Cleveland Board of Education v. LaFleur, 414 U.S. 632 (1974), which held respective four and five month prenatal leave policies of two school boards to be violative of due process. Controlling of the instant appeal, however, is our recent decision in Freeport Area School District v. Pennsylvania Human Relations Commission, 18 Pa. Commonwealth Ct. 400, 335 A. 2d 873 (1975), where this Court held that a three and a half month mandatory prenatal leave policy violated Section 5(a). President Judge Bowman, writing for the Court, stated:
“The instant case, insofar as it involves prenatal terminations of active employment, is controlled in principle by Cerra v. East Stroudsburg Area School District, 450 Pa. 207, 299 A. 2d 277 (1973), where our Supreme Court held that the dismissal of a school teacher for failure to resign at the end of the fifth month of her pregnancy violated section 5 (a), writing:
‘. . . Mrs. Cerra’s contract was terminated absolutely, solely because of pregnancy. . . . There was no evidence that the quality of her services as a teacher was or would be affected as a result of the pregnancy. Male teachers, who might well be temporarily disabled from a multitude of illnesses, have not and will not be so harshly treated. In short, Mrs. Cerra and other pregnant women are singled out and placed in a class to their disadvantage. They are discharged from their employment on the basis of a physical condition peculiar to their sex. This is sex discrimination pure and simple.’ 450 Pa. at 213, 299 A. 2d at 280.” 18 Pa. Commonwealth Ct. at 407-08, 335 A.2d at 877.
We have considerably more difficulty with the Commission’s holding that the limitation of maternity leave to married teachers amounts to sex discrimination under *620 Section 5(a). Although Appellant apparently concedes this point by limiting its argument to a justification of the discriminatory impact of the policy on unmarried pregnant teachers as a necessary “bona fide occupational qualification,” we will briefly address the issue because of its novelty and its obvious centrality to a finding of a violation of Section 5(a).
At first blush, the limitation of maternity leave eligibility to married teachers would appear to be discrimination in the employment relationship on the basis of marital status rather than sex. Discrimination based upon marital status per se is not, of course, prohibited by Section 5 (a). Whether such a classification would contravene the requirements of substantive due process or equal protection are questions which are not now before us. Cf. Andrews v. The Drew Municipal Separate School District, 507 F. 2d 611 (5th Cir. 1975). Although an employer may adopt an employment practice which differentiates between employees or prospective employees on the basis of their marital status, the standard adopted must be applied equally to both males and females to avoid the charge of sex discrimination. See Phillips v. Marietta Corp., 400 U.S. 542 (1971); Jurinko v. Edwin L. Wiegand Co., 477 F. 2d 1038 (3rd Cir. 1973), vacated on other grounds, 414 U.S. 970 (1974); Sprogis v. United Air Lines, Inc., 444 F. 2d 1194 (7th Cir. 1971), cert. denied, 404 U.S. 991 (1971).[2] The underlying basis of *621 Cerra v. East Stroudsburg Area School District, supra, and Freeport Area School District v. Pennsylvania Human Relations Commission, supra, is that pregnancy is a physical disability, though naturally limited to the female sex, which may not be treated differently from other long-term physical disabilities suffered by all employees. In the instant case, Appellant’s policy of limiting maternity leave to married teachers, although facially differentiating only between married and unmarried female teachers, has the effect of creating a condition precedent to the eligibility of an employee for disability leave which must only be met by female teachers, and, as such, constitutes sex discrimination under Section 5(a). “The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class. Discrimination is not to be tolerated under the guise of physical properties possessed by one sex... or through the unequal application of a seemingly neutral company policy.” Sprogis v. United Air Lines, Inc., supra, 444 F. 2d at 1198.
Additionally, the instant policy discriminates against females if its laudatory purpose, as suggested by Appel *622 lant, is to insure the moral qualifications of public school teachers. The effect of a denial of maternity leave to an unwed pregnant female teacher is to terminate absolutely her employment. In this sense, the policy functions as a penalty. Yet, there is no evidence that the Appellant has adopted a mandatory termination policy for unwed male teachers who have fathered illegitimate children or have otherwise participated in extramarital sex. If the classification was intended to discourage what Appellant perceived to be immoral conduct, the brunt of its policy is placed solely upon unmarried female teachers due to the obvious physiological visibility of their pregnant condition, and this amounts to sex discrimination. See Doe v. Osteopathic Hospital of Wichita, Inc., 333 F. Supp. 1357 (D. Kans. 1971); Equal Employment Opportunities Commission Decision No. 71-562, CCH, EEOC Decision 6184 (1970).
Having determined Appellant’s limitation of maternity leave to married pregnant teachers to constitute sex discrimination under Section 5(a), we find without merit Appellant’s contention that such a classification is supported by a bona fide occupational qualification (BFOQ), i.e., that a school has the obligation of maintaining the moral tenor of the educational environment which is best accomplished by discouraging unmarried teachers from becoming pregnant. In this respect, Appellant argues that the standard for judging the validity of its “married-only” maternity leave policy is “whether this policy creates an arbitrary or unreasonable classification wholly unrelated to the objective sought to be advanced by the school district in adopting it.” The law is clear, however, that the exemption provided by a BFOQ is to be narrowly construed, and an employer asserting a BFOQ has the burden of proving that he has a factual basis for believing • that all or substantially all of the discriminated against class would be unable to satisfactorily perform the duties of the job involved. Philadelphia v. Human *623 Relations Commission, supra; Pittsburgh Press Employment Advertising Discrimination Appeal, 4 Pa. Commonwealth Ct. 448, 287 A.2d 161 (1972), Newmon v. Delta Air Lines, Inc., 374 F. Supp. 238 (N.D. Ga. 1973). “The principle of nondiscrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group.” Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228, 235 (5th Cir. 1969), quoted with approval in Pittsburgh Press, supra, at 465, 287 A.2d at 170.
As specifically applied to unwed pregnant teachers, Appellant would have to establish that all or substantially all of these individuals could not provide the proper moral model believed to be necessary for school-age children. The record in this respect, consisting as it does of merely a stipulation admitting to the existence of the maternity policies here attacked, does not reflect a consideration of the moral qualifications of the individual teachers affected by the policy. There is no evidence that a teacher who is unmarried and pregnant, could not continue to maintain the respect of her students or serve as a proper moral polestar to her impressionable charges. Rather, Appellant’s policy is based upon a broad assumption of the students’ reaction to such an individual, an assumption which is not supported by the record and which does not allow for an individualized consideration of the alleged moral incapacities of members of the disadvantaged group.
Nor may the Appellant’s authority to discharge a teacher for immorality under Section 1122 of the Public School Code of 1949[3] be equated with a legislative recognition that unmarried parenthood constitutes a BFOQ for public school teachers. As we have previously indicated, the establishment of a BFOQ requires an individ *624 ualized consideration of the capabilities of the members of a particular discriminated against group to satisfactorily perform a particular job. A utilization of Section 1122 itself to discharge unmarried pregnant teachers proven to be morally unfit to teach, however, would achieve this result without unduly generalizing as to the alleged immorality of the group. Additionally, it would allow Appellant to avoid the charge of sex discrimination by applying this provision equally against male teachers who have fathered children out of wedlock.
Appellant’s requirement that a teacher teach one year between maternity leaves is clearly a violation of Section 5 (a) absent a similar provision applied to long-term disabilities experienced by male teachers. In Freeport Area School District v. Pennsylvania Human Relations Commission, supra, we upheld a post-natal maternity leave policy requiring an employee to return to work within three months of her child’s birth or other termination of pregnancy because the same requirements were equally applied to other disabilities not peculiar to the female sex. Similarly, in Hutchison v. Lake Oswego School District No. 7, 374 F. Supp. 1056 (D. Or. 1974) a failure to allow accumulated sick leave to be applied to a pregnancy leave was held to be sex discrimination in violation of Title VII of the Civil Rights Act of 1964 because males were entitled to apply such sick leave to all disabilities. Here, there is no evidence that Appellant requires male teachers to teach at least one year between long-term disability leaves, and thus this aspect of the maternity leave policy also violates Section 5(a).
Appellant attempts to justify this policy as necessary to provide for a continuity of classroom instruction and to avoid overly burdensome administrative problems. “But, these problems are not confined to pregnancy cases. They also flow from the absence from duty of any teacher suffering any temporary disability, even the common cold.” Cerra, supra, at 214, 299 A. 2d at 280. More *625 over, absent proof of record that this policy, in fact, discourages pregnancies, the one year requirement does not sufficiently insure a greater continuity of instruction than would the absence of such a policy. Whether a teacher becomes pregnant within one year of her last maternity leave or after a longer interval, in either case her necessary termination of teaching responsibilities could equally occur in the middle of a school term.
Order
And Now, June 11, 1975, the order of the Pennsylvania Human Relations Commission in the above captioned matter is hereby affirmed, and the appeal of Leech-burg Area School District therefrom is dismissed.

. Providing in pertinent part: “It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification . . .
“(a) For any employer because of the . . . sex ... of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is best able and most competent to perform the services required.”

. The above cases are interpretive of section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200e-2 which, inter alia, prohibits discrimination in the terms and conditions of employment on the basis of sex. Because of the substantial similarity between this provision and Section 5 (a)3 of the Act, this Court has recognized as persuasive federal decisions on the subject of sex discrimination and what constitutes a bona fide occupational qualification to justify such discrimination. See Philadelphia v. Human Relations Commission, 7 Pa. Commonwealth Ct. 500, 300 A. 2d 97 (1973). This Court addressed the question of a classification ostensibly discriminating on the basis of marital status in the context *621 of the exemption of married women from the writ of capias ad respondendum in Percival v. City of Philadelphia, 12 Pa. Commonwealth Ct. 628, 317 A. 2d 677 (1974). There, as we conclude here, the marital classification was held to extend beyond the class of female taxpayers so as to discriminate against married male taxpayers and thus to be violative of Article I, Section 28 of the Pennsylvania Constitution (the ERA). An issue not raised here but of potential import is the effect of the ERA upon the continued constitutional viability of the bona fide occupational qualification exemption provided by Section 955 of the Act. See Commonwealth v. Pennsylvania Interscholastic Athletic Association, 18 Pa. Commonwealth Ct. 45, 334 A.2d 839 (1975). As suggested by Judge Rogers in Percival, the key language of the ERA is the concluding phrase, “because of the sex of the individual.” This would indicate that differentiations in the employment relationship which related to competence or “bona fide occupational qualifications" rather than the sex of an individual would not be inconsistent with the ERA.

. Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1122.