Carole B. Anderson and Pennsylvania State Education Association, Dale Moyer, Uni-Serv. Representative *v.* Upper Bucks County Area Vocational Technical School, Appellant. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Party Appellee.

104

Argued March 8, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John J. Hart,* with him *William E. Benner,* and *Power, Bowen & Valimont,* for appellant.

*James D. Keeney,* Assistant General Counsel, with him *Anne Farrer* and *Sanford Kahn,* General Counsel, for appellee.

*Walter P. DeForest,* with him *John G. Wayman; Scott F. Zimmerman; Peter D. Post; Reed, Smith, Shaw & McClay;* and, of counsel, *Stuart I. Saltman,* for amicus curiae, Westinghouse Electric Corporation.

*Harriett N. Katz,* with her *Alice M. Price, Susan C. Nicholas,* and *Leonard M. Sagot,* for amicus curiae, Kathleen Zichy, et al.

OPINION BY JUDGE ROGERS, May 5, 1977:

This is an appeal from an adjudication of the Pennsylvania Human Relations Commission holding that the appellant Upper Bucks County Area Vocational Technical School had discriminated against an employe because of her sex in violation of Section 5(a) of the Pennsylvania Human Relations Act (PHRA),[1] 43 P.S. §955(a).

Carole B. Anderson, a teacher, asked the appellant School to apply her accumulated sick leave to the total time she was absent from her employment as a result of her pregnancy.[2] The appellant refused Anderson's request because a provision of the collective bargaining agreement between it and its teachers excluded from "Sick Leave" any benefits for pregnancy. The pertinent parts of said provisions are:

> *Sick Leave.* In any school year whenever a professional or temporary professional employe is prevented by illness or accidental injury from following his or her occupation, the school district shall pay to said employe for each day of absence the full salary to which the employe may be entitled as if said employe were

---

[1] Act of October 27, 1955, P.L. 744, *as amended.*

[2] Appellee had accumulated 40 days of sick leave at the time of the request. She was absent from work due to pregnancy for 27 days. The total sick leave benefit for 27 days at Anderson's daily rate of $49.73 amounted to $1,342.41.

actually engaged in the performance of duty for a period of ten days. Such leave shall be cumulative from year to year. No employe's salary shall be paid if the accidental injury is incurred while the employe is engaged in remunerative work unrelated to school duties. Additional days may be approved by the School Board as the exigencies of the case may warrant.

. . . .

*Maternity Leave.* All female employes who become pregnant are entitled to a period of childbirth leave from their duties in the School District pursuant to the following provisos;

. . . .

e. All periods of childbirth leave shall be deemed leave without pay; during which period sick leave and/or other benefits will not accrue. (Emphasis in original.)

Anderson filed a complaint with the Commission alleging that the appellant's refusal of sick leave benefits for her pregnancy was sexually based and that it violated Section 5(a) of the PHRA. Following unsuccessful efforts at conciliation, the parties entered into a stipulation of facts. The Commission thereupon decided that:

2. Pregnancy-related disability is a temporary disability which must be treated in the same manner as any other temporary disability. Since pregnancy-related disability is a disability common only to women, to treat it differently from other disability by extending inferior compensation, terms, conditions and privileges of employment constitute sex discrimination in violation of Section 5(a) of the Pennsylvania Human Relations Act.

. . .

and ordered the appellant to pay Anderson the amount of money she would have received if her request for sick leave had been granted. The School has appealed.

Our review of appeals of a Commission order is limited to determining whether they are in accordance with law; whether substantial evidence supports findings of facts necessary to sustain the order; and whether the Commission properly exercised its discretion. *Leechburg Area School District v. Human Relations Commission*, 19 Pa. Commonwealth Ct. 614, 339 A.2d 850 (1975). The facts having been stipulated, our duty is only to decide whether the appellant's sick leave policy as it applies to pregnancy is an unlawful discriminatory practice with respect to the privileges of Anderson's employment.

Section 5(a) of the PHRA, 43 P.S. §955(a) pertinently declares that:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification. . .

(a) *For any employer because of* the race, color, religious creed, ancestry, age, *sex,* national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or *to* otherwise *discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment,* if the individual is the best able and most competent to perform the service required. The provision of this paragraph shall not apply, to (1) termination of employment because of the terms or conditions of any bona fide retirement or pension plan, (2) operation of the terms or conditions of any bona fide retirement or pension plan which have the effect of a minimum service requirement, (3)

operation of the terms or conditions of any bona fide group or employe insurance plan. (Emphasis added.)

We first observe that it has been decided that the exclusion of disability from pregnancy from the coverage of a State employment compensation disability insurance program does not amount to "invidious discrimination" under the Equal Protection Clause but that such an exclusion is a rationally supportable stopping point for benefits. *Geduldig v. Aiello*, 417 U.S. 484 (1974). We are, of course, also mindful that the United States Supreme Court has recently held, with heavy reliance on *Aiello*, that such an exclusion in a private employer's disability plan is not violative of Section 702(a)(1) of Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1).[3] *General Electric Co. v. Gilbert*, U.S. , 50 L.Ed. 2d 343 (1976). We are not constrained to reach in this case the result reached in either *Aiello* or *Gilbert*.

Discriminatory practices not constitutionally prohibited may nevertheless be statutorily proscribed. The instant case is one of statutory interpretation, not one for constitutional analysis. *Union Free School District No. 6 v. New York State Human Rights Appeal Board*, 35 N.Y. 2d 371, 320 N.E. 2d 859, 362 N.Y.S. 2d 139 (1974). This Court is not compelled by *Gilbert's* construction of Title VII of the Federal Civil Rights Act of 1964 to construe the Pennsylvania Human Relations Act in the same fashion. *Eisenstadt*

---

[3] Section 702(a)(1) reads:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

*v. Baird,* 405 U.S. 438 (1972) ; *Commonwealth of Pennsylvania v. The First School,*    Pa.    ,    A.2d (1977). Congress has expressly provided that State statutes defining sex discrimination more comprehensively than the Civil Rights Act of 1964 shall not be preempted or superseded by Title VII of the Civil Rights Act of 1964.[4]  42 U.S.C. §2000e-7; 42 U.S.C. §2000h-4.

In addressing the challenge, based on statute, to the disability plan in *Gilbert,* the Supreme Court adopted the same rationales it used in *Aiello* in deciding whether the plan there under consideration offended the Equal Protection Clause; to wit, (1) that the exclusion of pregnancy related disability is not a prima facie case of sex or gender classification, but rather a disability classification, and (2) that the complainant, Gilbert, failed to carry the additional burden of proving that the effect of this facially neutral classification was to discriminate against members of the female sex.[5]  In interpreting the anti-discrimination provision of Section 5(a) of the PHRA, we disagree,

---

[4] Nor does the preemption provision of the Employe Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1144(a), prevent a result different from that of *Gilbert,* because that provision is not applicable to benefit plans established by a State or its political subdivisions. *See* 29 U.S.C. §§1144(a), 1003(b)(1) and 1002(32). Furthermore, there is no evidence in this record that the appellants' regulations are qualified under ERISA.

[5] Mr. Justice STEVENS dissenting in *Gilbert* wrote that "the . . . burden of proving a prima facie violation [of the Equal Protection Clause] is significantly heavier than the burden of proving a prima facie violation of a statutory prohibition against discrimination [and thus], the constitutional holding in Geduldig v. Aiello, 417 U.S. 484, 41 L.Ed. 2d 256, 94 S.Ct. 2485 (1974), does not control the question of statutory interpretation presented by this case." *Gilbert, supra,* U.S. at   , 50 L.Ed 2d at 369. Post-*Geduldig,* pre-*Gilbert,* Federal Circuit cases dealing with Title VII make the same distinction as Mr. Justice STEVENS.

as did all pre-*Gilbert* Federal Circuit Court opinions addressing Title VII issues, with the premise that the exclusion of pregnancy related disability is not sex classification.[6] We believe that since pregnancy is unique to women, a disability plan which expressly denies benefits for disability arising out of pregnancy is one which discriminates against women employes because of their sex.

Turning now to Pennsylvania law, we find ample support for our belief just stated in cases holding that pregnancy based discrimination constitutes sex discrimination proscribed by Section 5(a) of the PHRA. In *Cerra v. East Stroudsburg Area School District*, 450 Pa. 207, 299 A.2d 277 (1973), the Supreme Court of Pennsylvania held that a school district regulation requiring pregnant teachers to resign at the end of their fifth month of pregnancy was contrary to Section 5(a) of PHRA. Mr. Justice (now Chief Justice) EAGEN there wrote:

> Mrs. Cerra's contract was terminated absolutely, solely because of pregnancy. She was not

---

[6] Mr. Justice BRENNAN also dissenting in *Gilbert* wrote:

Today's holding not only repudiates the applicable administrative guideline promulgated by the agency charged by Congress with implementation of the Act, but also rejects the unanimous conclusion of all six Courts of Appeals that have addressed this question. See Communication Workers of America v. A. T. & T. Co., 513 F.2d 1024 (CA 2-1975), petition for cert. pending, No. 74-1601; Wetzel v. Liberty Mutual Ins. Co., 511 F.2d 199 (CA 3 1975), vacated on juris grounds, 424 U.S. 737, 47 L.Ed. 2d 435, 96 S.Ct. 1202 (1976); Gilbert v. General Electric Co., 519 F.2d 661 (CA 4), cert. granted, 423 U.S. 822, 36 L.Ed. 2d 39, 96 S.Ct. 36 (1975); Tyler v. Vickery, 517 F.2d 1089, 1097-1099 (CA 5 1975); Satty v. Nashville Gas Co., 522 F.2d 850 . (CA 6 1975), petition for cert. pending, No. 75-536; Hutchinson v. Lake Oswego School Dist., 519 F.2d 961 (CA 9 1975), petition for cert. pending, No. 75-1049. *Gilbert, supra,* U.S. at , 50 L.Ed. 2d at 361.

allowed to resume her duties after the pregnancy ended, even though she was physically and mentally competent. There was no evidence that the penalty of her services as a teacher was or would be affected as a result of the pregnancy. Male teachers, who might well be temporarily disabled from a multitude of illnesses, have not and will not be so harshly treated. In short, Mrs. Cerra and other pregnant women are singled out and placed in a class to their disadvantage. They are discharged from their employment on the basis of a physical condition peculiar to their sex. *This is sex discrimination pure and simple.* (Emphasis supplied.)

*Cerra v. East Stroudsburg Area School District, supra* at 213, 299 A.2d at 280.

In *Freeport Area School District v. Pennsylvania Human Relations Commission,* 18 Pa. Commonwealth Ct. 400, 407, 335 A.2d 873, 877 (1975), this Court, in addressing the validity of a collective bargaining agreement's provision for compulsory unpaid maternity leave 3½ months prior to the predicted date of birth, likewise held that:

The amendment to section 5(a), adding discrimination on the basis of sex as an unlawful activity upon which this action is predicated, ... mean[s] that *pregnant women may not be treated differently from any other employee suffering under a physical disability.* (Emphasis supplied.) (Footnotes omitted.)

In *Freeport,* we also held that the fact that the discriminatory practice was, as here, incorporated in a collective bargaining agreement was no impediment to a challenge to its legality under Section 5(a) of PHRA.

In *Leechburg Area School District, supra,* where we struck down a pregnancy leave provision much like

that in *Freeport* with the additional feature that it was applicable only to *married* pregnant teachers, we said:

[P]regnancy is a physical disability, though naturally limited to the female sex, which may not be treated differently from other long-term physical disabilities suffered by all employees. In the instant case, Appellant's policy of limiting maternity leave to married teachers, although facially differentiating only between married and unmarried female teachers, has the effect of creating a condition precedent to the eligibility of an employee for disability leave which must only be met by female teachers, and, as such, constitutes sex discrimination under Section 5(a).

19 Pa. Commonwealth Ct. 619, 339 A.2d at 853.

Further support for our interpretation of Section 5(a) is to be found in the Commission's regulations which provide:

*Temporary disability due to pregnancy or childbirth.* Written and unwritten employment practices and policies regarding job benefits and job security, including, but not limited to, commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.[7] (Emphasis in original.)

16 Pa. Code §41.103(a).

─────────

[7] The Supreme Court, in *Gilbert, supra,* refused to follow a similar EEOC guideline. One reason given for this refusal to follow the guideline, which otherwise would be given "great deference," was that it was not adopted pursuant to any particular

Thus we conclude that the appellant's practice of excluding from disability coverage a disability unique to women, violates Section 5(a) of PHRA.

The appellant says that even if it is unlawful to exclude disability as the result of pregnancy from a plan providing benefits for disability for other causes, Anderson is not entitled to benefits under this plan which gives benefits only for "illness or accidental injury." Pregnancy, it says, is neither an illness nor an accidental injury. The argument is captious. If accepted, we would be forced to commit the absurdity of deciding that the appellant's exclusion in its Marital Leave regulations of pregnancy from disability coverage is discriminatory, while holding that Anderson, an apparent victim of discrimination, is not entitled to benefits because her disability is not from illness or accidental injury. *Unemployment Compensation Board of Review v. Perry*, 22 Pa. Commonwealth Ct. 429, 431-32, 349 A.2d 531, 533 (1975), is instructive. We there held that an unemployment compensation claimant who quit work because of pregnancy was, just as claimants quitting because of other disabilities, required to provide a doctor's statement that her health required her to terminate her employment. We there, by Judge WILKINSON, said:

Somehow appellant insists that a voluntary quit for reasons of pregnancy is a leaving for a necessitous and compelling reason under a recent opinion of the Attorney General of Pennsylvania. Quite the contrary. The Attorney General's opinion correctly sets forth the law to be that the Pennsylvania Human Relations

statutory grant of authority. Here, the Commission regulation was adopted pursuant to express statutory authority to "adopt, promulgate, amend, and rescind rules and regulations to effectuate the policies and provisions of "[the Pennsylvania Human Relations Act]." Section 7(d) of PHRA, 43 P.S. §957(d).

114

Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §951 et seq., requires that pregnancy be treated as any other disease. Just as the employer may not discharge the employee for pregnancy without a showing that in her particular case, the pregnancy made her incapable of satisfactorily fulfilling her assigned tasks, so the employee may not voluntarily quit because of pregnancy and be eligible for unemployment compensation benefits without a showing that her decision was based on medical advice.

So here, while pregnancy may not be illness or accidental injury, it must under Pennsylvania law be treated as any other physical infirmity.

Appellant finally says that the Commission's decision affects the operation of the terms or conditions of a bona fide group insurance plan and therefore falls within the exemption in Section 5(a) for plans having such effect. The appellant's reference is to its Group Income Protection Plan (GIPP) which is coordinated with its sick leave benefits[8] and is described in the parties' stipulations as follows:

Under said Plan a disabled employe is paid $7 per school day for total disability resulting from an accident or sickness. Payments start on the first day of disability due to accident and the third day of disability due to sickness and continue until all accumulated Sick Leave has been used at which time an amount of $14 to $28 per school day, depending upon the number of sick days accumulated prior to disability, is paid to the employe following termination of Sick Leave paid by Respondent and continuing for as long as two calendar years for any one

---

[8] GIPP benefits are apparently paid from the proceeds of an insurance policy. Sick leave benefits are paid by the appellant.

continuous period of accident or illness disability.

GIPP does not provide coverage for pregnancy related disability. Hence, the appellant says that the Commission's order will require it to change the terms or conditions of its group insurance plan. We disagree. The Commission's order in this case does not affect GIPP benefits. First, the appellee never claimed benefits from GIPP; and second, the amount of $1,342.71 which the Commission ordered the appellant to pay Anderson is the exact amount she would be entitled to on account of sick leave and includes no GIPP benefits.

Accordingly, we enter the following

ORDER

AND Now, this 5th day of May, 1977, it is ordered and decreed that the decision, order and award of the Pennsylvania Human Relations Commission be and it is hereby affirmed and that the appeal of the Upper Bucks County Area Vocational Technical School be and is hereby dismissed.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The pertinent part of the collective bargaining agreement in question reads:

*Sick Leave.* In any school year whenever a professional or temporary professional employe is prevented by illness or accidental injury from following his or her occupation, the school district shall pay to said employe for each day of absence the full salary to which the employe may be entitled as if said employe were actually engaged in the performance of duty for a period of ten days. Such leave shall be cumulative from year to year. No employe's salary shall be paid if the accidental injury is incurred

while the employe is engaged in remunerative work unrelated to school duties. Additional days may be approved by the School Board as the exigencies of the case may warrant.

Carole B. Anderson, a teacher, requested her employer, Upper Bucks County Area Vocational Technical School, to pay her under the above sick leave provisions for the days she was absent from her employment as a result of her pregnancy. When her employer refused to do so, she filed a complaint with the Pennsylvania Human Relations Commission, alleging that her employer had violated Section 5(a) of the Pennsylvania Human Relations Act,[1] 43 P.S. §955(a).

I agree that the instant case is one of statutory interpretation, not one for constitutional analysis, and that the cases of *Geduldig v. Aiello,* 417 U.S. 484 (1974), and *General Electric Co. v. Gilbert,* U.S. , 50 L. Ed. 2d 343 (1976), are not controlling here. Yet the following reasoning and logic of those decisions have relevance to this case.[2]

A reading of the collective bargaining agreement discloses that there is no illness or accidental injury from which men are protected and women at not. Likewise, there is no illness or accidental injury from which women are protected and men are not.

Pregnancy-related disabilities constitute an additional risk, unique to women, and the failure here of the employer to compensate them for work loss due to this risk's becoming a reality does not destroy the

---

[1] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§951-963.

[2] In *General Electric Corp. v. Human Relations Commission,* Pa. , 365 A.2d 649 (1976), our Supreme Court based its decision primarily on certain principles of fair-employment law which have emerged relative to the interpretation of Title VII of the Civil Rights Act of 1964 and utilized them to construe Section 5(a) of the Pennsylvania Human Relations Act.

parity of benefits accruing to men and women alike by the terms of the sick leave provision under attack in the instant case. The majority holds that the employer in this case is guilty of sex discrimination in not providing compensation for pregnancy-related disabilities, although an employer who provided no sick leave benefits at all would not have discriminated on the basis of sex.

While it is true that only women can become pregnant, it does not follow that every classification concerning pregnancy is a sex-based classification. *Geduldig v. Aiello, supra.* Here the employe simply contends that, although she has received sick leave benefits equivalent to that provided all other employes, she has suffered discrimination because she encountered a risk that was outside the protection of sick leave provisions in the collective bargaining agreement. I do not view such facts to constitute, under the Pennsylvania Human Relations Act, sex discrimination for which the employer may be held accountable.[3]

President Judge BOWMAN joins in this dissent.

---

[3] The majority relies heavily on *Cerra v. East Stroudsburg Area School District*, 450 Pa. 207, 299 A.2d 277 (1973) ; *Unemployment Compensation Board of Review v. Perry*, 22 Pa. Commonwealth Ct. 429, 349 A.2d 531 (1975) ; *Leechburg Area School District v. Human Relations Commission*, 19 Pa. Commonwealth Ct. 614, 339 A.2d 850 (1975) ; and *Freeport Area School District v. Human Relations Commission*, 18 Pa. Commonwealth Ct. 400, 335 A.2d 873 (1975). However, besides being factually distinguishable from the instant case in that they did not involve payment under a sick leave plan, they are distinguishable since they involved arbitrary and capricious rules and are lacking in any cost considerations. Cost considerations of employe disability plans are significant, legally as well as financially. *General Electric Co. v. Gilbert, supra.*