411 A.2d 486

**BOARD OF SCHOOL DIRECTORS OF FOX CHAPEL AREA SCHOOL DISTRICT, Appellant,**

v.

**Cheryl Y. ROSSETTI, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1979.

Decided Dec. 21, 1979.

Reargument Denied March 5, 1980.

Hayes C. Stover, Janice H. Anderson, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, for appellant.

Ronald N. Watzman, Daniel R. Delaney, Pittsburgh, for appellee.

Before O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

On July 17, 1975, appellee, Cheryl Rossetti, a fifth-grade teacher, requested a maternity leave from the Board of School Directors of Fox Chapel Area School District (the Board). The Board granted the requested maternity leave; and, upon a second request, it granted an additional four-week extension.[1] Appellee was to resume her teaching duties on January 13, 1976; but by letter of January 5, 1976,

---

1. The relevant provision of the Collective Bargaining Agreement, Article 11, Section B, provision 4 states:

    The maternity leave will end upon the PE's [Professional Employee's] recovering the ability to follow her occupation. As long as her disability continues, however, she may be absent for an initial period of eight weeks following the termination of pregnancy. In the event of continuing disability, she may apply for an extension not to exceed thirty days beyond the conclusion of such eight-week period and may apply for additional extensions thereof, each not to exceed an additional thirty days. The application for the first extension and for any subsequent extension must be submitted within five days preceding the conclusion of such eight-week period or of the then current extension and must be accompanied by a certificate of her physician that the extension is needed for her recovery.

appellee requested a leave of absence for the remainder of the 1975–76 school year. Appellee stated in this letter to the Superintendent of the Fox Chapel Area School District that her "duties as a new mother, which include breast-feeding" necessitated the requested leave of absence. The Superintendent responded by stating that the Collective Bargaining Agreement contained no provisions for child-rearing leave. On the day prior to the scheduled commencement of appellee's teaching duties, she and a field representative of the Pennsylvania State Education Association attempted to procure from the Board an unpaid leave of absence purportedly in order to breast-feed the child as a preventive measure against allergies.[2] This request was denied by the Board, and appellee refused to return to work and resume her teaching responsibilities even though so ordered.

On February 19, 1976, the Board filed charges of dismissal against appellee. Hearings were then held on these matters before the Board on March 4, 1976, and again on May 18, 1976. At the conclusion of these hearings, the Board voted unanimously to dismiss appellee.

Appellee subsequently filed an appeal with the Secretary of Education (Secretary) who by order dated December 27, 1976, Teacher Tenure Appeal No. 300, directed the Board to reinstate appellee without loss of pay, seniority or accrued benefits. The Board sought review of the Secretary's order in the Commonwealth Court and that court affirmed the order of the Secretary. *Board of School Directors of Fox Chapel v. Rossetti*, 36 Pa.Cmwlth. 105, 387 A.2d 957 (1978). The Commonwealth Court held:

[s]ince the development of the law in this area has been based upon the unique position of the female confronted

---

**2.** The record shows that Dr. Linblad, the pediatrician of appellee's child, wrote a letter dated January 12, 1976. Based upon information appellee herself supplied to the pediatrician concerning her own history of allergy, the letter stated:

To Whom It May Concern: Mrs. Rossetti has a history of allergy problems. Since breast feeding helps to decrease allergic tendencies in children and is the most compatible food for an infant with a strong family history of allergies, I have advised Mrs. Rossetti that it would be best for her to breast feed her child.

with the prospect of childbirth, it follows that the request for additional leave for breastfeeding purposes under the circumstances of this case is merely a logical and natural extension of that concept. Consequently, the refusal of the Board to grant respondent's request for an unpaid leave of absence . . . amounted to an unlawful discriminatory practice . . . . *Id.*, 36 Pa.Cmwlth. at 112–113, 387 A.2d at 960.

We granted the Board's petition for allowance of appeal and now reverse.

■ Appellee first contends that her request for a leave of absence falls within the purview of the maternity-leave provision of the Collective Bargaining Agreement[3] and not within the discretionary-leave provision as the Board asserts.[4] The entire record, however, shows that there was substantial evidence to support the Board's position. First, the maternity-leave provision provides that each extension shall not exceed thirty days; yet, appellee, in fact, sought a leave of absence far in excess of that period. On January 5, 1976, she sought a leave for the remainder of the 1975–76 school year. Secondly, the maternity-leave provision provides that requests for extensions must be accompanied by a physician's certificate establishing the need for the exten-

---

3. For the terms of that provision see note 1 *supra*.

4. This disagreement stems, in part, from the shifting reasons offered as to the purpose for the leave of absence requested by appellee. Her letter of June 5, 1976 states that "duties as a new mother, which include breast-feeding" necessitated the leave. Then before the Board on January 12, 1976, appellee stated that breast-feeding was a preventive measure against allergies developing in the child. Finally, at the hearings of dismissal and for the first time in her multiple dealings with the school authorities, appellee offered a newly-advanced reason for breast-feeding her child, namely, that her infant rejected bottle-feeding upon discharge from the hospital in October, 1975. But testimony of the pediatrician, as well as that of appellee, suggested that the decision to breast-feed was made prior to appellee's consulting with the pediatrician. The pediatrician's letter to the Board makes no reference to this purported bottle rejection (*see* note 2 *supra* ). Appellee only decided to inform the pediatrician of this crucial matter on her fifth visit to the pediatrician on February 20, 1976. In light of the entire record, the Board did not believe that appellant's baby had rejected bottle-feeding.

sion. Yet appellee stated in her letter to the Board (wherein she requested a leave of absence) that her obstetrician would not certify her need for another extension since, in his judgment, she had recovered from pregnancy. Thirdly, the Board hearings established that appellee was both physically and mentally fit to resume her teaching responsibilities; and, in that situation, the maternity-leave provision expressly provides that "[t]he maternity leave will end upon the [Professional Employee's] recovering the ability to follow her occupation." Finally, the maternity-leave provision makes no mention of extensions for health needs other than for the woman's own recovery; yet, appellee's request was based upon maternal duties generated by her child's health needs.

■ Based on the above, it was reasonable for the Board to conclude that its only contractual obligation was to consider granting appellee an unpaid, discretionary leave of absence [5] and not a maternity-leave extension. Furthermore, where a reasonable person acting reasonably might have reached the same decision as the Board, then there is substantial evidence for the Board's determination which should not then be disturbed on appeal. *Penn-Delco School Dist. v. Urso*, 33 Pa.Cmwlth. 501, 511, 382 A.2d 162, 167 (1978).

■ Appellee's second contention is that she was, nevertheless, sexually discriminated against by the Board's failure to grant her the discretionary leave of absence to discharge her maternal duties. Appellee cites as support for her proposition this Court's holding that pregnancy-based discrimination constitutes sex discrimination in violation of

5. The relevant discretionary-leave provision of the Collective Bargaining Agreement, Article 11, Section A, Provision 3, provides:
   Other Types of Leave. A leave, which shall begin and end within a single school year, *may be granted* to a PE [Professional Employee] for other purposes approved by the school district. Normally such leaves will be granted only to coincide with one or more entire marking periods. The PE [Professional Employee] shall receive no salary or salary credit during the absence. (Emphasis supplied).

Section 5(a) of the Pennsylvania Human Relations Act.[6] *Cerra v. East Stroudsburg Area School Dist.*, 450 Pa. 207, 299 A.2d 277 (1973). The evil which the Pennsylvania Human Relations Act seeks to overcome is the dissimilar treatment, on the basis of sex, of persons similarly situated. But appellee has in no way suggested that male teachers have been or would be granted discretionary leaves of absence while females were denied them. To the contrary, appellee has been treated *no differently* then any male teacher would be who had to remain at home to care for a physically or emotionally disabled newborn infant.[7]

■ Hence, appellee's failure to return to work was without any legal justification and her dismissal by the Board was for proper cause.[8] Any other result would create the anomalous situation of a school board's having lawfully exercised its bargained-for discretion, determining that its employee must return to work, and yet be without any power to terminate the employment relationship in the face of an employee's refusal to comply.

6. Section 5(a) of the PHRA, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a) provides, *inter alia* :

   It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification . . . . (a) For any employer because of . . . sex . . . to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

7. The Collective Bargaining Agreement contains no child-rearing provision. Bargaining representatives of the school had sought to win such a provision during their negotiations, but the Board's position rejecting such a provision prevailed.

8. Appellee was charged with persistent negligence, persistent and willful violation of the school laws of the Commonwealth, and incompetence. *See* section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1122. While choosing between the health-care needs of one's child and keeping one's job may be a difficult choice, appellee did choose to remain at home; her refusal to return to work persisted from January 13, 1976, the date of expiration of her extended leave, until the termination of her contract on May 18, 1976.

For the foregoing reasons, the order of the Commonwealth Court in affirming the decision of the Secretary of Education is reversed; and the Board's determination as to appellee's dismissal is reinstated.

EAGEN, C. J., did not participate in the consideration or decision of this case.

MANDERINO, J., did not participate in the decision of this case.

O'BRIEN and NIX, JJ., concur, in the result.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

The majority holds that the School Board's refusal to grant appellee Cheryl Rossetti an unpaid leave of absence for purposes of breastfeeding her allergy-prone infant does not violate the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §§ 951 et seq. (Supp.1978–79). Since I conclude that the action of the School Board constitutes an unlawful discriminatory practice within the meaning of section 5(a) of the Act, I must dissent.

While the School Board may provide for discretionary unpaid leave, 16 Pa.Code § 41.104(a),* it may not exercise its discretion in a discriminatory manner. Section 5(a) of the Pennsylvania Human Relations Act provides that it is an unlawful discriminatory practice for:

"any employer because of . . . sex . . . to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required."

* This regulation of the Pennsylvania Human Relations Commission provides that "[n]othing in these regulations shall prohibit an employment policy that permits granting of leave for purposes of childrearing beyond the period of actual disability, but such leave shall not include payment of sickness or disability benefits."

The School Board's denial of discretionary leave to appellee for purposes of medically-recommended breastfeeding clearly violates this provision.

The majority contends that "appellee has been treated no differently than any male teacher would be who had to remain at home to care for a physically or emotionally disabled newborn infant." This position ignores the obvious reality that only women can perform the breastfeeding function. Thus when the School Board arbitrarily denies discretionary leave sought for reasons unique to women, the School Board is discriminating on the basis of sex. The Legislature expressly proscribed such discriminatory practices in the Pennsylvania Human Relations Act. See *Cerra v. East Stroudsburg Area School District*, 450 Pa. 207, 299 A.2d 277 (1973) (regulation requiring resignation of teachers at fifth month of pregnancy held to violate § 5(a)); *Anderson v. Upper Bucks County Area Vocational Technical School*, 30 Pa.Cmwlth. 103, 373 A.2d 126 (1977) (collective bargaining provision prohibiting application of accumulated sick leave to maternity leave constituted sex discrimination).

Accordingly, I would affirm the Commonwealth Court's order which affirmed the order of reinstatement by the Secretary of Education.